# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

MARK ZAID,

      Plaintiff,

  v.

UNITED STATES DEPARTMENT OF
HOMELAND SECURITY,

      Defendant.

Case No. 8:22-cv-01602-DKC

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S
## MOTION FOR SUMMARY JUDGMENT

**TABLE OF CONTENTS**

I.    INTRODUCTION ...............................................................................................1

II.   FACTS AND ADMINISTRATIVE PROCEEDINGS..................................2

    A.  ICE's Receipt of Plaintiff's FOIA Request and the Court's Memorandum
        Opinion ................................................................................................2

    B.  ICE's Search Process – Generally and in This Case...........................3

        1.  ICE construed Plaintiff's FOIA Request in accordance with the
            Court's Memorandum Opinion and conducted searches .....................6

        2.  ICE's review and processing of potentially responsive records, and the
            administrative history..........................................................................8

    C.  The *Vaughn* Index ...........................................................................10

III.  STANDARD OF REVIEW: SUMMARY JUDGMENT UNDER RULE 56(A).......10

IV.   ARGUMENT ..............................................................................................13

    A.  ICE Conducted a Reasonable Search.................................................14

    B.  ICE Properly Asserted Various FOIA Exemptions ..........................17

        1.  Defendant Properly Asserted Exemption 7(A) ...................................17

            a.  The records were compiled for law enforcement purposes .....17

            b.  Disclosure of the records could reasonably be expected to
                interfere with enforcement proceedings...................................18

        2.  Defendant Properly Asserted Other Underlying Exemptions..............20

            a.  Exemption 3 .............................................................................21

            b.  Exemption 5 .............................................................................21

            c.  Exemption 6, 7(C) and 7(F) ....................................................25

            d.  Exemption 7(E)........................................................................27

    C.  Defendant Has Satisfied Any Duty to Segregate ..............................28

CONCLUSION........................................................................................................................29

CERTIFICATE OF SERVICE ................................................................................................29

Defendant, the United States Department of Homeland Security ("DHS" or "Defendant"), through its undersigned counsel, Erek L. Barron, United States Attorney for the District of Maryland, and Alicia L. Shelton, Assistant United States Attorney for that district, submits this Memorandum of Law in Support of Motion for Summary Judgment.

## I.    INTRODUCTION

Plaintiff Mark Zaid, counsel to Zachary Ellis Sanders, filed this action, a single count against DHS, alleging that it violated the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 (2018) and the Privacy Act, 5 U.S.C. § 552a., with respect to Plaintiff's FOIA request to DHS, reference tracking no. 2022-HQFO-00701 ("Plaintiff's FOIA Request"). Plaintiff's FOIA Request relates to the investigation, prosecution and subsequent conviction of Mr. Sanders for child pornography and related crimes in *United States v. Zachary Ellis Sanders*, No. 20-143 (E.D. Va. filed March 19, 2020). Upon receipt and review of Plaintiff's FOIA Request, DHS determined that it should be transferred to two DHS component agencies, the United States Secret Service ("USSS") and the United States Immigration and Customs Enforcement ("ICE"), for processing. Plaintiff challenged the adequacy of the responses by USSS and ICE in response to Plaintiff's FOIA Request. *See* ECF No. 32 at 2. In a Memorandum Opinion granting in part and denying in part Defendant's motion for summary judgment, the Court found that Defendant was entitled to summary judgment with respect to the adequacy of the search by USSS for the only subpart challenged by Plaintiff, subpart number five for records referencing "hurtcore." *See* ECF No. 32 at 18-21. With respect to ICE's response, the Court found that Defendant was entitled to summary judgment with respect to the fifth subpart of Plaintiff's FOIA Request for any records referencing "hurtcore," and denied summary judgment with respect to subparts one through four of Plaintiff's FOIA request. ECF No. 32 at 15-17.

1

Following the issuance of the Court's Memorandum Opinion, ICE conducted searches for first four subparts of Plaintiff's FOIA Request and produced responsive documents subject to applicable FOIA Exemptions.[1] The attached declaration of Fernando Pineiro, the FOIA Officer of the ICE FOIA Office ("Pineiro Decl."), and the attachments thereto explain ICE's process with respect to Plaintiff's FOIA Request.[2] ICE identified and involved its appropriate program office, ICE's Homeland Security Investigations ("HSI"), which searched for, processed and disclosed responsive records in response to Plaintiff's FOIA Request. The Pineiro Declaration also describes the bases for withholding, in full or in part, records exempt under the FOIA. As explained in greater detail below, the undisputed facts show that ICE adequately searched for responsive records and properly invoked the pertinent FOIA exemptions, and Plaintiff cannot show a material issue as to ICE's good faith. Because ICE satisfies those burdens under the FOIA, Defendant is entitled to summary judgment, under Rule 56(a) of the Federal Rules of Civil Procedure ("Rules").

## II.    FACTS AND ADMINISTRATIVE PROCEEDINGS

### A.  ICE's Receipt of Plaintiff's FOIA Request and the Court's Memorandum Opinion.[3]

By letter dated March 4, 2022, Plaintiff submitted a FOIA request to DHS. *See* ECF No. 23-2; Pineiro Decl., ¶ 6. Plaintiff's FOIA Request was transferred to ICE on April 29, 2022, requesting records responsive to five subparts ("Plaintiff's FOIA Request") and was assigned tracking number 2022-ICFO-14224. Pineiro Decl., ¶¶ 6-8 and Attachment B. It sought:

---

[1] References to various "Exemptions" refer to the applicable subsection of 5 U.S.C. § 552(b).

[2] The Pineiro Declaration and attachments thereto are attached as **Exhibit 1**.

[3] Defendant's Motion for Summary Judgment dated March 23, 2023, ECF No. 23, and the Court's Memorandum Opinion, ECF No. 32, set forth the facts and administrative proceedings with respect to DHS's receipt of Plaintiff's FOIA request, the subsequent transfer to USSS and ICE, and the actions taken by USSS and ICE upon receipt, which are incorporated by reference here.

1.      Any communication – including verbal discussions memorialized in writing – between DHS and other U.S. Government agencies regarding the Target IP Address or the Target Website, as publicly acknowledged on pages 1 through 3 of the redacted Memorandum Opinion filed on October 29, 2020 ("Opinion"), that is attached as Exhibit "1";

2. Any communication – including verbal discussions memorialized in writing – between DHS and the Federal Bureau of Investigation that was relied upon in forming the basis for Special Agent Christopher Ford's findings and conclusions about what the user of the Target IP Address had or had not done at the Target Website, as publicly referenced on pages 2 and 3 of the Opinion;

3. Any records outlining the U.S. Government's understanding prior to August 19, 2019, of what was involved and required to be done to de-anonymize the IP addresses of Internet users who visited the Target Website, as publicly referenced on pages 1 through 3 of the Opinion;

4. All records pertaining to the IP address 98.169.118.39 from May 22, 2019, to February 10, 2020;

5. Any records referencing "Hurtcore."

*Id*. The ICE FOIA Office requested clarification from Plaintiff, notified Plaintiff that if a response was not received within thirty days, the request would be administratively closed, and administratively closed Plaintiff's FOIA Request on June 29, 2022. *Id.*, ¶¶ 10-11.

On July 5, 2023, the Court entered a Memorandum Opinion and Order, granting summary judgment in favor of Defendant with respect to the fifth subpart of Plaintiff's FOIA Request for documents related to "hurtcore." *See* ECF No. 32 at 17; ECF No. 33 at 2. The Court denied summary judgment to Defendant with respect to ICE's searches in response to the other four subparts of Plaintiff's FOIA Request. *See* 33 at 2.

**B.  ICE's Search Process – Generally and in This Case.**

ICE is the principal investigative arm of DHS and the second largest investigative agency in the federal government, employing more than 20,000 people in offices in every state and in 48 foreign countries. Pineiro Decl., ¶ 30. When the ICE FOIA Office receives a FOIA request, the

intake staff evaluates it to determine if it is a proper FOIA request per DHS regulation 6 C.F.R. § 5.3. *Id.*, ¶ 22. Proper FOIA requests are entered into a database known as Secure Release and assigned a case tracking number. *Id.*

ICE records are maintained by leadership offices and/or within ICE directorates, including but not limited to, HSI. *Id.*, ¶ 23. The program offices, such as HSI, are typically staffed with a designated point of contact ("POC") who is the primary person responsible for communications between that program office and the ICE FOIA Office, and is a person with detailed knowledge about the operations of his/her respective program office. *Id.*, ¶ 23. The ICE FOIA Office also identifies which program office(s), based upon their experience and knowledge of ICE's program offices, within ICE are reasonably likely to possess records responsive to that request, if any, and tasks the relevant program offices with searches. *Id.*, ¶ 24. Next, the ICE FOIA Office provides the POCs with a copy of the FOIA request and instructs them to conduct a search for responsive records. Pineiro Decl., ¶ 24.The POCs review the FOIA request and any case-specific instructions that may have been provided, and based on their experience and knowledge of their program office practices and activities, forward the request and instructions to the individuals or component office(s) that they believe are reasonably likely to have responsive records, if any. *Id.*

In conformity with the ICE FOIA Office's instructions, the individuals and component offices are directed to conduct searches of their file systems, including both paper files and electronic files, which in their judgment, based on their knowledge of the manner in which they routinely keep records, would most likely be the files to contain responsive documents. *Id.*, ¶ 25. Once those searches are completed, the individuals and component offices provide any potentially responsive records to their program office's POC, who in turn, provides the records to the ICE FOIA Office. *Id.* The ICE FOIA Office then reviews the collected records for responsiveness and

the application of appropriate FOIA Exemptions. *Id.* ICE employees maintain records in several ways and on various systems, such as investigative files, records regarding the operation of ICE programs, and administrative records, which may be stored on individual computer hard drives, program office's shared drives (if any), or external storage devices. *Id.*, ¶ 26. The determination of whether or not these electronic locations must be searched in response to a particular FOIA tasking, as well as how to conduct any necessary searches, is necessarily based on the manner in which the employee maintains his/her files. Pineiro Decl., ¶ 26. Additionally, all ICE employees have access to a Microsoft Outlook e-mail system, which may be archived in a manner that works best for each employee. *Id.*, ¶ 27.

Records received by the ICE FOIA Office from the program office POCs are assigned to a FOIA processor who determines whether the records are responsive to the FOIA request. *Id.*, ¶ 28. If the records are responsive, the FOIA processor will redact information pursuant to the FOIA or Privacy Act, as appropriate, while simultaneously ensuring that all reasonably segregated non-exempt information is released. *Id.* When needed, the ICE FOIA Office coordinates with program offices to ensure records are properly redacted and information is correctly segregated. *Id.*, ¶ 29. Once the ICE FOIA Office completes its coordination efforts and all responsive records have been processed, the ICE FOIA Office releases the responsive records to the requestor. *Id.*

Here, the ICE FOIA Office determined that because Plaintiff's FOIA Request related to a child exploitation investigation, HSI was the program office likely to have responsive records (if such records existed). Pineiro Decl., ¶ 33. HSI oversees ICE's international affairs operations and law enforcement intelligence functions, and is responsible for investigating a wide range of domestic and international activities arising from the illegal movement of people and goods into, within and out of the United States. *Id.*, ¶ 31. HSI uses its legal authority to investigate criminal

activities such as: immigration crime; child exploitation; human rights violations and human smuggling; smuggling of narcotics, weapons and other types of contraband; and financial crimes, cybercrime and export enforcement issues. *Id.* With regards to its child exploitation investigations, HSI employs the latest technology to collect evidence and track the activities of individuals and organized groups who sexually exploit children using the dark web, chat rooms, peer-to-peer trading and other internet- based platforms. *Id.*, ¶ 32. HSI supports this mission through the Child Exploitation Investigations Unit, which provides assistance to HSI field offices; coordinates major investigations; conducts operations throughout the world to identify and rescue child victims and to identify and apprehend offenders; and delivers training to HSI personnel and state, local, federal and international law enforcement partners. *Id.*

POCs in HSI's Records Disclosure Unit ("RDU") review FOIA requests to HSI, and based on their subject matter expertise and knowledge of the program offices' activities within HSI, they determine whether it can search for records, or whether it is necessary to forward the FOIA request to specific individuals and component offices to conduct searches of their file systems which in their judgment, based on their knowledge of the manner in which they routinely keep records, would be reasonably likely to have responsive records, if any. *Id.*, ¶ 34. Based on HSI's subject matter expertise and knowledge, HSI conducts comprehensive searches for records and to provide all potentially responsive records located during that search to the ICE FOIA Office for review and processing. Pineiro Decl., ¶ 33.

### 1. *ICE construed Plaintiff's FOIA Request in accordance with the Court's Memorandum Opinion and conducted searches.*

After issuance of the Court's Memorandum Opinion and Order granting summary judgment as to the fifth subpart of Plaintiff's FOIA Request and denying summary judgment as to

the first four subparts of Plaintiff's FOIA Request, *see* ECF No. 32 at 17 and ECF No. 33 at 2, HSI

conducted a search with respect to the first four subparts of Plaintiff's FOIA request as follows:

- The request in subpart one sought "[a]ny communication – including verbal discussions memorialized in writing – between DHS and other U.S. Government agencies regarding the Target IP Address or the Target Website, as publicly acknowledged on pages 1 through 3 of the redacted Memorandum Opinion filed on October 29, 2020 ("Opinion"), that is attached as Exhibit "1." ECF No. 32 at 7.

  o HSI confirmed it was not involved in the Federal Bureau of Investigation's ("FBI") matter involving the Memorandum Opinion the Plaintiff referred to in the first subpart, and therefore, HSI had no responsive communications. Pineiro Decl., ¶ 37.

- The request in subpart two sought "[a]ny communication – including verbal discussions memorialized in writing between DHS and the Federal Bureau of Investigation that was relied upon in forming the basis for Special Agent Christopher Ford's findings and conclusions about what the user of the Target IP Address had or had not done at the Target Website, as publicly referenced on pages 2 and 3 of the Opinion. ECF No. 32 at 7.

  o HSI confirmed that it was not involved in the FBI matter, it was also confirmed that there were no communications regarding Christoper Ford's findings and conclusions as indicated in the second subpart of Plaintiff's FOIA request. Pineiro Decl., ¶ 37.

- The request in subpart three sought "[a]ny records outlining the U.S. Government's understanding prior to August 19, 2019, of what was involved and required to be done to de-anonymize the IP addresses of Internet users who visited the Target Website, as publicly referenced on pages 1 through 3 of the Opinion." ECF No. 32 at 7.

  o HSI determined that there might be responsive records because the HSI Special Agent was involved in a separate investigation that arose from the matter to which Plaintiff was seeking information. Pineiro Decl., ¶ 38. Because the HSI Special Agent involved would have the most familiarity with the records being sought, HSI tasked the Special Agent with conducting a search of the Investigative Case Management ("ICM") system. *Id.* ICM serves as the core law enforcement case management tool primarily used by HSI. *Id.* ICM is used to manage immigration cases that are presented for criminal prosecution as well as to support its civil immigration enforcement cases. *Id.*

- The request in subpart four sought "[a]ll records pertaining to the IP address 98.169.118.39 from May 22, 2019 to February 10, 2020. ECF No. 32 at 7.

o  HSI determined that there might be responsive records because the HSI Special Agent was involved in a separate investigation that arose from the matter to which Plaintiff was seeking information. Pineiro Decl., ¶ 38. Because the HSI Special Agent involved would have the most familiarity with the records being sought, HSI tasked the Special Agent with conducting a search of the ICM system. *Id.*

After determining that no responsive records exist with respect to the first and second subparts of Plaintiff's FOIA Request, and that there might be responsive records with respect to the third and fourth subparts of Plaintiff's FOIA Request, searches were performed. The HSI Special Agent, based on the Plaintiff's FOIA request, his familiarity with ICE and HSI procedures, experience, and knowledge of the investigation, conducted searches utilizing the terms "98.169.118.39" and "Zackary Sanders" on (1) the ICM system—the core law enforcement case management / record keeping tool for HSI, and (2) the e-mail account (including all incoming and outgoing e-mails) of the Special Agent handling the investigation, as he served as the primary point of contact in HSI for the investigation. *Id.*, ¶ 39.  Accordingly, and based on the information described in the Pineiro Declaration, all locations likely to contain records responsive to Plaintiff's FOIA Requests (to the extent that they exist within ICE's custody) were searched.  *Id.*

## 2.  *ICE's review and processing of potentially responsive records, and the administrative history.*

After completing adequate searches, ICE reviewed and processed potentially responsive records. The HSI Special Agent determined that 929 pages were potentially responsive and sent them to the ICE FOIA Office for review and processing. *Id.*, ¶ 40. ICE made productions on November 17, 2023, and on December 29, 2023. *Id.*, ¶¶ 16, 40. ICE notified Plaintiff that additional records that were determined to be subject to court sealing orders were set aside. *Id.*

On January 23, 2024, the Court held a status call and the parties agreed that ICE would produce a *Vaughn* index and declaration regarding the redactions and withholdings. *See* ECF No.

40 at 2; Pineiro Decl., ¶ 17. ICE undertook the preparation of a *Vaughn* Index regarding the redactions and withholdings, and during the process, the HSI Special Agent assigned to handle most of the ongoing matters advised that most of the documents that had been produced should have been withheld because they are part of ongoing criminal investigations, and that other documents needed further inquiry as to the status. Pineiro Decl., ¶¶ 18, 41. Once ICE determined the records should not have been produced, on April 5, 2024, the ICE FOIA Office sent a "clawback" letter to Plaintiff advising that the records contain privileged information, including potentially law enforcement sensitive information, with a request that Plaintiff return, sequester, or destroy the 929 produced pages of records, and refrain from using or disclosing the contents of the records. *Id.*, ¶¶ 19; 42. On April 15, 2024, Plaintiff issued a response letter to Defendant stating that Plaintiff disputes the withholdings, that Plaintiff had disseminated materials to third parties who would not return or destroy them, and that Plaintiff agreed to not further disseminate or rely on the records until the Court has adjudicated the matter.[4] *See* ECF No. 45 at 2.

The HSI Special Agent again reviewed the 929 produced pages which had been clawed back to determine whether any portions of the 929 produced pages were part of an active and ongoing investigation. Pineiro Decl., ¶¶ 20, 43. HSI determined that 36 pages related to judgments for matters that were finalized and had been released, and were therefore subject to partial withholdings pursuant to FOIA Exemptions (b)(6) and (b)(7)(C). *Id.* The ICE FOIA Office

---

[4] Defendant has requested from Plaintiff the identities of the individuals and/or entities to whom Plaintiff provided the records subject to the clawback letter, so that Defendant may pursue return or destruction of those records that Plaintiff disseminated. *See* ECF No. 45 at 2. Plaintiff has refused to provide the identities prior to the Court's adjudication of the merits of ICE's production and withholdings. *See id.* If the Court grants summary judgment in Defendant's favor, Defendant expects Plaintiff to provide the identities so that Defendant is able to pursue all available remedies in seeking return or destruction of the records Plaintiff shared with third-parties, and will seek Court intervention if Plaintiff refuses to comply.

produced to Plaintiff the 36 releasable responsive pages with partial withholdings and produced a *Vaughn* Index reflecting the asserted bases for the partial withholdings.[5] *Id.* HSI reviewed the remaining 893 pages on a document by document basis and determined that the 893 pages were from or related to multiple ongoing child exploitation case files and were withheld in full under FOIA Exemption (b)(7)(A) because they were related to ongoing criminal investigations. *See id.*. ¶¶ 43, 45, 48.

### C.  The *Vaughn* Index

Pursuant to the requirements set forth in *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973), and as explained in greater detail below and in the Pineiro Declaration, Defendant has prepared a *Vaughn* Index, which is attached to the Pineiro Declaration at **Exhibit A**, that provides a description of each withholding, in part or in full, and the applicable exemptions. Pineiro Decl., ¶¶ 45-48 and Exhibit A thereto.

### III.    STANDARD OF REVIEW: SUMMARY JUDGMENT UNDER RULE 56(A)

Summary judgment is appropriate when "'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law,' based on the 'materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations … , admissions, interrogatory answers, or other materials.'" *Hardwick ex rel. Hardwick v. Heyward*, 711 F.3d 426, 433 (4th Cir. 2013) (quoting FED. R. CIV. P. 56(a), (c)). An issue of fact is "genuine" only if the evidence is such that a reasonable factfinder could find for the non-moving party. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A fact

---

[5] On May 8, 2024, Defendant submitted to the Court *in-camera* a declaration addressing the 893 clawed back pages that were subject to withholding in full under Exemption (b)(7)(A), as well as a *Vaughn* Index that included the 893 pages withheld in full and the 36 pages that were produced with partial withholdings. Pineiro Decl., ¶¶ 21, 44.

is "material" only if it could affect the outcome of the case under the applicable governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The mere existence of some alleged factual dispute will not defeat an otherwise properly supported summary judgment motion. *See id.* at 247-48. Once the movant presents a properly supported motion for summary judgment, the burden shifts to the non-movant to set forth specific facts, through affidavits or other evidence, that there is a genuine issue for trial. *See* FED. R. CIV. P. 56(e). The non-moving party "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985).

"In general, FOIA disputes are, and should be, resolved by way of summary judgment." *Am. Mgmt. Servs., LLC v. Dep't of the Army*, 842 F. Supp. 2d 859, 866 (E.D. Va. 2012), *aff'd*, 703 F.3d 724 (4th Cir. 2013); *Moore v. United States*, No. 1:13-cv-02353, 2014 WL 2575765, at *2 (D. Md. June 6, 2014). To prevail on a summary judgment motion, the agency must prove "that it has fully discharged its obligations under the FOIA, after the underlying facts and inferences to be drawn from them are construed in the light most favorable to the FOIA requester." *Nicholas v. NSA*, No. 1:05-cv-02800, 2006 WL 4071922, at *1 (D. Md. May 11, 2006) (internal quotation marks and citation omitted); *see also Taitz v. Astrue*, 806 F. Supp. 2d 214, 217 (D.D.C. 2011). "This may be accomplished by demonstrating that the agency conducted a 'search reasonably calculated to uncover all relevant documents' and that the search was reasonably adequate under the facts of the specific case." *Nicholas*, 2006 WL 4071922, at *1 (quoting *Ethyl Corp. v. United States Environmental Protection Agency*, 25 F.3d 1241, 1246 (4th Cir. 1994)).

To meet its burden, the Government may rely on reasonably detailed and nonconclusory affidavits or declarations. *Id*. To establish the adequacy of a search, an agency "may rely on a reasonably detailed, nonconclusory, good faith affidavit to show the adequacy of its search. It is

not necessary that a search unveil every potentially responsive or relevant document." *Id.* (citing Ethyl Corp., 25 F.3d at 1247); *Clay v. DOJ*, No. 1:09-cv-00179, 2010 WL 325587, at *3 (D.D.C. Jan. 29, 2010); *see also In Def. of Animals v. NIH*, 543 F. Supp. 2d 83, 98 (D.D.C. 2008) ("To meet its burden, the agency may submit affidavits or declarations that explain both in reasonable detail and in a non-conclusory fashion the scope and method of the agency's search."). In considering the agency's submissions, the court should "consider and accord 'substantial weight to the expertise of the agencies charged with determining what information the government may properly release.'" *Bowers v. DOJ*, 930 F.2d 350, 357 (4th Cir. 1991) (quoting *Simmons v. DOJ*, 796 F.2d 709, 711 (4th Cir. 1986)); *see Havemann v. Astrue*, No. 1:10-cv-01498, 2012 WL 4378143, at *4 (D. Md. Sept. 24, 2012) (stating that affidavits submitted by an agency are "entitled to a presumption of good faith") (internal citation and quotation marks omitted); *see also SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) ("Agency affidavits are accorded a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents."(internal quotation marks and citation omitted)).

If an agency has redacted information or withheld documents in response to a FOIA request, the agency must show that it properly invoked any FOIA exemptions. *See* 5 U.S.C. § 552(a)(4)(B); *Dep't of State v. Ray*, 502 U.S. 164, 173 (1991). The agency can satisfy its burden through affidavits, declarations, a *Vaughn*[6] index, or other evidence showing that the information

---

[6] *See Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973). There is no set formula for a *Vaughn* index. "[I]t is well established that the critical elements of the *Vaughn* index lie in its function, and not in its form." *Kay v. FCC*, 976 F. Supp. 23, 35 (D.D.C. 1997). "A *Vaughn* index must: (1) identify each document withheld; (2) state the statutory exemption claimed; and (3) explain how disclosure would damage the interests protected by the claimed exemption." *Citizens Comm'n on Human Rights v. FDA*, 45 F.3d 1325, 1326 n.1 (9th Cir. 1995). "Of course, the explanation of the exemption claim and the descriptions of withheld material need not be so detailed as to reveal that which the agency wishes to conceal, but they must be sufficiently specific to permit a reasoned

is exempt from disclosure. *See, e.g.*, *Bowers*, 930 F.2d at 357 ("If the government fairly describes the content of the material withheld and adequately states its ground for nondisclosure, and if those grounds are reasonable and consistent with the applicable law, a district court should uphold the government's position.") (quoting *Spannaus v. DOJ*, 813 F.2d 1285, 1289 (4th Cir. 1987)). "To prevail over this presumption a requestor must demonstrate a material issue by producing evidence, through affidavits or other appropriate means, contradicting the adequacy of the search or suggesting bad faith." *Havemann v. Colvin*, 629 F. App'x 537, 539 (4th Cir. 2015).

Defendant's declarant for ICE is Fernando Pineiro, the FOIA Director of the ICE FOIA Office. Pineiro Decl. ¶ 1. As the FOIA Director, Mr. Pineiro is responsible for supervising ICE responses to requests for records under FOIA, the Privacy Act, and other applicable records access statutes and regulations. *Id.* The Pineiro Declaration describes the details of ICE's efforts to identify the appropriate offices to handle Plaintiff's FOIA Request, ICE's searches for and review of potentially responsive records, ICE's productions, ICE's review and determination for applicable FOIA Exemptions, and ICE's preparation of a *Vaughn* index.

## IV.    ARGUMENT

"The basic purpose of FOIA is to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." *Casa de Md., Inc. v. U.S. Dep't of Homeland Sec.*, 409 F. App'x 697, 699 (4th Cir. 2011) (quoting *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978)). Generally, under FOIA, when a person or entity makes a specific and reasonable request for records from a federal agency, the agency must make the responsive records available. *See* 5 U.S.C. § 552(a)(3)(A); *Am.*

---

judgment as to whether the material is actually exempt under FOIA." *Founding Church of Scientology of Washington, D.C. v. Bell*, 603 F.2d 945, 949 (D.C. Cir. 1979).

*Mgmt. Servs., LLC*, 703 F.3d at 728. Because public disclosure may not always be in the public interest, however, FOIA contains nine exemptions designed to safeguard various public interests against the harms that would arise from overbroad disclosure. *See Am. Mgmt. Servs., LLC*, 703 F.3d at 728-29 (internal citation and quotation marks omitted). Although courts narrowly construe the FOIA exemptions, the "narrow construction does not imply that disclosure is always called for." *Sung Bal Cho v. USDA*, No. 1:05-cv-01456, 2006 WL 8456574, at *2 (D. Md. May 3, 2006).

Defendant's actions in responding to the FOIA Request are fully justified and, as a result, the Court should grant summary judgment in Defendant's favor. The Pineiro Declaration comprehensively articulates the search Defendant conducted for responsive records and the descriptions of and justifications for the information Defendant withheld under Exemptions 3, 5, 6, 7(A), 7(C), 7(E) and 7(F).

### A. ICE Conducted a Reasonable Search.

ICE has submitted a detailed declaration demonstrating that it conducted a reasonable search for responsive records, and is therefore entitled to summary judgment on this issue. An agency is entitled to summary judgment on the adequacy of its search if it demonstrates that it made a "'good faith effort to conduct a search ... using methods which can be reasonably expected to produce the information requested." *Manivannan v. Dep't of Energy, Nat'l Energy Tech. Lab.*, 843 F. App'x 481, 483 (4th Cir. 2021) (quoting *DiBacco v. Dep't of the Army*, 926 F.3d 827, 832 (D.C. Cir. 2019)). "There is no requirement that an agency search every record system." *Goldner v. SSA*, 293 F. Supp. 3d 540, 546 (D. Md. 2017) (quoting *Oglesby*, 920 F.2d at 68). Indeed, "the issue to be resolved is not whether there might exist any other documents possibly responsive to the [FOIA] request, but rather whether the search for those documents was adequate." *Rein v. USPTO*, 553 F.3d 353, 363 n.14 (4th Cir. 2009) (quoting *Zemansky v. EPA*, 767 F.2d 569, 571

14

(9th Cir. 1985)). The search is thus evaluated "not by the fruits of the search, but by the appropriateness of the methods used to carry out the search." *Ayyad v. IRS*, No. 8:16-cv-03032, 2018 WL 704849, at *4 (D. Md. Feb. 2, 2018) (quoting *Iturralde v. Comptroller of Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003)).

An agency can obtain summary judgment as to the adequacy of its search by submitting "reasonably detailed, nonconclusory affidavits describing its efforts." *Baker & Hostetler LLP v. U.S. Dep't of Commerce*, 473 F.3d 312, 318 (D.C. Cir. 2006). "When the adequacy of a search is challenged, an agency may demonstrate the adequacy of its search by submitting an affidavit that is 'reasonably detailed, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials (if such records exist) were searched so as to give the requesting party an opportunity to challenge the adequacy of the search.'" *Taitz v. Colvin*, No. 1:13-cv-01878, 2013 WL 6623196, at *2 (D. Md. Dec. 13, 2013) (quoting *Ethyl Corp. v. EPA*, 25 F.3d 1241, 1246-47 (4th Cir. 1994)). This standard is not demanding. "[I]n the absence of countervailing evidence or apparent inconsistency of proof, affidavits that explain in reasonable detail the scope and method of the search conducted by the agency will suffice ...." *Lindsey v. NSA*, No. 90-2408, 1990 WL 148422, at *2 (4th Cir. Oct. 9, 1990) (quoting *Perry v. Block*, 684 F.2d 121, 127 (D.C. Cir. 1982)).

Here, the Pineiro Declaration demonstrates that ICE conducted a thorough and reasonable search for responsive records. As ICE's declarant explains, ICE first determined that based on the subject matter expertise and knowledge of the program offices' activities, and the nature of Plaintiff's FOIA Request, HSI's RDU should be tasked with review of the request. Pineiro Decl., ¶¶ 34-35. Next, based on the Court's Memorandum Opinion, ECF No. 32, HSI conducted a search with respect to the first four subparts of Plaintiff's FOIA Request. *Id.*, ¶ 36.

With respect to the first subpart and second subparts, HSI confirmed that no responsive records exist. *Id.*, 37. HSI confirmed it was not involved in the Federal Bureau of Investigation's ("FBI") matter involving the Memorandum Opinion the Plaintiff referred to in the first subpart, and therefore, HSI had no responsive communications. *Id.* HSI also confirmed that it was not involved in the FBI matter and that there were no communications regarding Christoper Ford's findings and conclusions as indicated in the second subpart of Plaintiff's FOIA Request. *Id.*

With respect to the third and fourth subparts, HSI determined that there might be responsive records because the HSI Special Agent was involved in a separate investigation that arose from the matter to which Plaintiff was seeking information. Pineiro Decl., ¶ 38. Because the HSI Special Agent involved would have the most familiarity with the records being sought, HSI tasked the Special Agent with conducting a search of the ICM system. *Id.* The HSI Special Agent, based on the Plaintiff's FOIA request, his familiarity with ICE and HSI procedures, experience, and knowledge of the investigation, conducted searches utilizing the terms "98.169.118.39" and "Zackary Sanders" on (1) the ICM system—the core law enforcement case management / record keeping tool for HSI, and (2) the e-mail account (including all incoming and outgoing e-mails) of the Special Agent handling the investigation, as he served as the primary point of contact in HSI for the investigation. *Id.*, ¶ 39.

The Pineiro Declaration provides a reasonably detailed explanation of ICE's search efforts, including the methods and search terms employed, the locations searched, and the rationale for choosing those locations. *See* Pineiro Decl., ¶¶ 36-39 *see also Gizmodo Media Grp., LLC v. FBI*, 366 F. Supp. 3d 585, 590 (S.D.N.Y. 2019) ("Courts have repeatedly upheld index searches of [the] CRS to be adequate when they are supported by detailed declarations explaining the underlying systems and the search procedures used."). The Pineiro Declaration demonstrates that ICE's search

was reasonably calculated to locate all responsive records and, therefore, Defendant is entitled to summary judgment as to the adequacy of its search. *See, e.g., Charnock v. Barr*, No. 1:18-cv-00676, 2019 WL 3238581, at *3 (D.D.C. July 18, 2019) (holding that the DOJ's "declaration supports the adequacy of [its] search by providing the specific search term used, the files searched, and an explicit declaration that all files likely to contain responsive records were searched"); *see also Mobley v. CIA*, 806 F.3d 568, 584 (D.C. Cir. 2015) (finding the FBI's search of the CRS to be adequate because of, in part, an agency declaration asserting that the FBI's search was "reasonably likely to produce the information [plaintiff] requested").

**B. ICE Properly Asserted Various FOIA Exemptions.**

*1. Defendant Properly Asserted Exemption 7(A).*

a. <u>The records were compiled for law enforcement purposes.</u>

As a threshold matter, to fall within any of the exemptions under the umbrella of Exemption 7, a record must have been "compiled for law enforcement purposes." *Pub. Emps. for Env't Responsibility v. U.S. Section, Int'l Boundary & Water Comm'n*, 740 F.3d 195, 202-03 (D.C. Cir. 2014). In determining whether records are compiled for law enforcement purposes, "the focus is on how and under what circumstances the requested files were compiled and whether the files sought relate to anything that can fairly be characterized as an enforcement proceeding." *Clemente v. FBI*, 867 F.3d 111, 119 (D.C. Cir. 2017) (citation omitted). Documents are "compiled for law enforcement purposes" if they were, for example, "created to prevent crime and keep people safe," *Elec. Privacy Info. Ctr. v. DHS*, 777 F.3d 518, 522-23 (D.C. Cir. 2015), "deter illegal activity and ensure national security," *Sack v. DOD*, 823 F.3d 687, 694 (D.C. Cir. 2016), or otherwise show a "rational nexus between the investigation and one of the agency's law enforcement duties and a connection between an individual or incident and a possible security risk or violation of federal

law." *See Blackwell v. FBI*, 646 F.3d 37, 40 (D.C. Cir. 2011) (quoting *Campbell v. DOJ*, 164 F.3d 20, 32 (D.C. Cir. 1998)).

Here, the responsive records here were compiled for law enforcement purposes. First, ICE is the largest investigative arm of DHS, the second largest investigative agency in the federal government and is charged with the administration and enforcement of laws. *See* Pineiro Decl., ¶ 50. ICE's HSI investigates criminal activities including but not limited to, immigration crime, human rights violations and human smuggling, smuggling of narcotics, weapons and contraband, financial crimes, cybercrime, and relevant here, child exploitation. *See id.*, ¶¶ 31-32, 50. The records Plaintiff seeks concern active and ongoing criminal investigations involving child exploitation, including violations of federal crimes related to child pornography—crimes of which Plaintiff was convicted in October 2021. *See id.*, 51; ECF No. 23-2; ECF No. 32 at 1-2. Because the records Plaintiff seeks relate to ICE's criminal investigations of child pornography crimes, there is a "rational nexus between the investigation and one of the agency's law enforcement duties and a connection between an individual or incident and a possible … violation of federal law." *See Blackwell*, 646 F.3d at 40. As a result, the records Plaintiff seeks in the FOIA Request were compiled for law enforcement purposes, and thus meet the threshold requirement for invocation of any of the exemptions under the Exemption 7 umbrella. *See* Pineiro Decl., ¶¶ 50-51.

> b. Disclosure of the records could reasonably be expected to interfere with enforcement proceedings.

Exemption 7(A) prevents the disclosure of law enforcement records that "could reasonably be expected to interfere with enforcement proceedings …." 5 U.S.C. § 552(b)(7)(A). To invoke this exemption, an agency must "demonstrate that 'disclosure (1) could reasonably be expected to interfere with (2) enforcement proceedings that are (3) pending or reasonably anticipated.'"

*Citizens for Responsibility & Ethics in Wash. (CREW) v. USDOJ*, 746 F.3d 1082, 1096 (D.C. Cir. 2014) (quoting *Mapother v. USDOJ*, 3 F.3d 1533, 1540 (D.C. Cir. 1993)). Exemption 7(A) is intended to "prevent disclosures which might prematurely reveal the government's cases in court, its evidence and strategies, or the nature, scope, direction, and focus of its investigations." *Maydak v. USDOJ*, 218 F.3d 760, 762 (D.C. Cir. 2000). "An agency may 'satisfy its burden of proof' under Exemption 7(A) 'by grouping documents in categories and offering generic reasons for withholding documents in each category.'" *Shapiro v. DOJ*, No. 1:12-cv-00313, 2020 WL 3615511, at *16 (D.D.C. July 2, 2020) (quoting *Maydak*, 218 F.3d at 765). An agency's task under this approach is three-part: "the agency (1) must define its categories functionally; (2) must conduct a document-by-document review in order to assign documents to the proper category; and (3) must explain to the court how the release of each category would interfere with enforcement proceedings." *Shapiro*, 2020 WL 3615511, at *16 (cleaned up).

Defendant has satisfied this three-part approach. First, in the Pineiro Declaration and the *Vaughn* Index, Defendant "define[s] its categories functionally," without providing a document-by-document description of the records within the investigative file, as doing so would undermine the interests that the FBI seeks to protect under Exemption 7(A). *See* Pineiro Decl., ¶¶ 46, 53 and Exhibit A. Without enumerating them here, in the Pineiro Declaration and the attached *Vaughn* Index, Defendant identifies the several separate "types of records." *See id.* ¶¶ 45-47 and Exhibit A.  Defendant explains each type of record and further distills those categories down into sub-categories (and sub-sub categories), each with its own further explanation for the types of information and documents likely to be included. *Id.* The Pineiro Declaration also confirms that ICE conducted a document-by-document review of the responsive records, using an automated review process, to confirm the applicability of Exemption 7(A) and to assess the applicability of

19

underlying exemptions. *Id.*, ¶ 54. Finally, the Pineiro Declaration explains how the release of each category would interfere with enforcement proceedings. *Id.*, ¶¶ 55-57. More specifically, disclosure of the records could interfere with ongoing proceedings in criminal cases, such as sentencing, appeal, potential new trials, etc. *Id.*, ¶ 55. The release of the records related to investigations of third-party individuals would also allow individuals to critically analyze documents concerning these investigations, including evidence gathered during the investigation and the identity of victims, which could allow those individuals to destroy evidence, create false evidence, intimidate victims, and otherwise interfere with the investigations or evade ICE's investigative efforts. *See id.* In this regard, release of information in the records would potentially harm the government's investigative and enforcement efforts, thus reducing the likelihood of prosecution of the investigative subjects for their crimes, which involve the exploitation of children. The Pineiro Declaration provides specific explanations for how the release of each category of documents would interfere with enforcement proceedings. *See id.* ¶¶ 55-57.

Because Defendant can establish that the responsive documents were compiled for law enforcement purposes, and that it satisfies the three-part approach for invoking Exemption 7(A), Defendant has properly invoked Exemption 7(A). *See, e.g.*, *Pinson v. USODJ*, 177 F. Supp. 3d 56, 86 (D.D.C. 2016) (granting the Government summary judgment on its invocation of Exemption 7(A) where the FBI provided "a declaration detailing the pending law enforcement proceeding, categories of exempt documents, and reasons explaining why release of these documents would interfere with the proceedings").

## 2. *Defendant Properly Asserted Other Underlying Exemptions.*

Because Defendant establishes that Exemption (7)(A) applies to all the information in the 893 pages withheld in full in this case, the Court need not continue its analysis of the underlying

exemptions—the non-public information is already properly withheld under the categorical (7)(A) exemption. But in an abundance of caution, and if the Court disagrees that records were properly withheld under Exemption (7)(A), ICE also asserts other FOIA exemptions, described below. Because Defendant's assertions of these exemptions are "logical or plausible," the Court should sustain them. *See Igoshev v. NSA*, No. 1:17-cv-01363, 2018 WL 2045530, at \*7 (D. Md. May 1, 2018) (quoting *Larson v. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009)); Pineiro Decl., ¶ 58.

      a.   <u>Exemption 3</u>

5 U.S.C. § 552(b)(3) exempts from disclosure information which is:

> specifically exempted from disclosure by statute … if that statute (A)(i) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue; or (A)(ii) establishes particular criteria from withholding or refers to particular types of matters to be withheld; and (B) if enacted after the date of enactment of the Open FOIA Act of 2009, specifically cites to this paragraph.

As one court explained:

> The Supreme Court has set forth a two-part analysis for courts reviewing an agency's invocation of Exemption 3.  CIA v. Sims, 471 U.S. 159, 167 … (1985).  First, the court must determine whether the statute designated by the withholding agency is one properly within the bounds of Exemption 3.  See id.  If so, the court must then determine whether the withheld information meets the requirements of that statute.  See id.

*Roman v. NSA*, No. 2:07-cv-4502, 2009 WL 303686, at \*5 (E.D.N.Y. Feb. 9, 2009). Here, ICE withheld information under Exemption 3 under the Child Victims' and Child Witnesses' Rights Act, 18 U.S.C. § 3509(d). Pineiro Decl., ¶ 59. The Pineiro Declaration demonstrates that this statute is within the bounds of Exemption 3, and various cases have so held. *See id.*; *Gatson v. FBI*, No. 2:15-cv-05068, 2017 WL 3783696, at \*10 (D.N.J. Aug. 31, 2017) (holding that the Pen Register Statute and Child Victims' and Child Witnesses' Act are within the purview of Exemption 3).  As a result, Defendant properly applied Exemption 3 to these records.

      b. <u>Exemption 5</u>

Exemption 5 protects from mandatory disclosure "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency …." 5 U.S.C. § 552(b)(5). "Among the privileges incorporated by FOIA Exemption 5 are the deliberative process privilege, the attorney work product privilege, and the attorney-client privilege." *Judicial Watch, Inc. v. HUD*, 20 F. Supp. 3d 247, 256 (D.D.C. 2014) (internal quotation marks omitted); *see also Judicial Watch, Inc. v. U.S. Dep't of State*, 349 F. Supp. 3d 1, 6 (D.D.C. 2018) ("Exemption 5 unequivocally incorporates all civil discovery rules, including the attorney-client and deliberative process privileges."). Defendant properly asserted the deliberative process privilege (the "DPP"), attorney work product privilege and the attorney work product privilege. *See* Pineiro Decl., ¶¶ 60-64.

The DPP "encourages free-ranging discussion of alternatives; prevents public confusion that might result from the premature release of such nonbinding deliberations; and insulates against the chilling effect likely were officials to be judged not on the basis of their final decisions but for matters they considered before making up their minds." *City of Va. Beach v. U.S. Dep't of Commerce*, 995 F.2d 1247, 1252-53 (4th Cir. 1993) (cleaned up). The DPP protects materials that are both pre-decisional and deliberative. *Id.* at 1253. A "pre-decisional" document is one "prepared in order to assist an agency decision maker in arriving at his decision." *Ethyl Corp.*, 25 F.3d at 1248 (quoting *Coastal States Gas Corp. v. U.S. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980)). A document is part of the "deliberative process" if "the disclosure of [the] materials would expose an agency's decision-making process in such a way as to discourage candid discussion within the agency and thereby undermine the agency's ability to perform its functions." *Dudman Commc'ns Corp. v. Dep't of Air Force*, 815 F.2d 1565, 1568 (D.C. Cir. 1987); *City of Va. Beach*,

995 F.2d at 1253 (holding that a document is deliberative if it "reflects the give-and-take of the consultative process by revealing the manner in which the agency evaluates the possible alternative policies or outcomes") (internal citation and quotation marks omitted). The DPP thus protects "recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency." *City of Va. Beach*, 995 F.2d at 1253 (internal citation and quotation marks omitted). Even factual materials may be encompassed within the privilege. *See Nat'l Wildlife Fed. v. U.S. Forest Serv.*, 861 F.2d 1114, 1118 (9th Cir. 1988).

Here, ICE asserted the DPP to records which contain internal deliberative discussions, deliberations and recommendations between ICE employees and other law enforcement agencies and attorneys to assist in making decisions on preparing motions, search warrants and law enforcement inquiries. *See* Pineiro Decl. ¶¶ 61-62. As described in the Pineiro Declaration, these materials reflect deliberations integral to reaching final agency decisions. *See id*. Moreover, the Pineiro Declaration details the foreseeable harm to the Government if it had to disclose the handwritten, investigative interview notes, as well as draft affidavits.  *See id*. Defendant properly asserted the DPP.

"To be considered attorney work product, a document must have been 'prepared by an attorney in contemplation of litigation which set[s] forth the attorney's theory of the case and his litigation strategy.'" *Hanson v. U.S. Agency for Int'l Dev.*, 372 F.3d 286, 292 (4th Cir. 2004) (quoting *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 154 (1975)); *Judicial Watch v. U.S. Dep't of Justice*, 432 F.3d 366, 369 (D.C. Cir. 2005); *Hickman v. Taylor*, 329 U.S. 495, 510 … (1947) (noting that the attorney work product doctrine "should be interpreted broadly and held largely inviolate."). The work-product doctrine can apply to preparatory work performed not only by

attorneys, but also, in some circumstances by nonlawyers, *United States v. Nobles*, 422 U.S. 225, 238-239 … (1975), and "does not distinguish between factual and deliberative material," *Martin v. Office of Special Counsel*, 819 F.2d 1181, 1187 (D.C. Cir. 1987); *Mervin v. FTC*, 591 F.2d 821, 825-26 (D.C. Cir. 1978) (noting that "even the factual material segregated from attorney work-product is likely to reveal some of the attorney's tactical and strategic thoughts" and that while "pure statements of fact" are not exempt "from disclosure by calling them attorney work-product ... material which might disclose an attorney's appraisal of factual evidence is attorney work-product exempted from disclosure by exemption 5"). Thus, "[a]ny part of [a document] prepared in anticipation of litigation, not just the portions concerning opinions, legal theories, and the like, is protected by the work product doctrine and falls under exemption 5." *Tax Analysts v. IRS*, 117 F.3d 607, 620 (D.C. Cir. 1997).

Here, Defendant asserted the attorney work product privilege to protect drafts that were created by Department of Justice attorneys to prepare for an open and ongoing investigation in collaboration with other law enforcement agencies. Pineiro Decl. ¶ 63. Moreover, the Pineiro Declaration details the foreseeable harm to the Government if it had to disclose the drafts. *See id*. Therefore, Defendant properly asserted the attorney work product privilege. *See, e.g.*, *Borda v. USDOJ*, 306 F. Supp. 3d 306, 320 (D.D.C. 2018) ("Recent cases have generally held that draft affidavits ... are covered by the work-product rule ….") (cleaned up).

"The attorney-client privilege protects 'confidential communications between an attorney and his client relating to a legal matter for which the client has sought professional advice.'" *Jud. Watch, Inc. v. U.S. Dep't of State*, 349 F. Supp. 3d at 6–7 (quoting *Mead Data Cent., Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 252 (D.C. Cir. 1977)). With respect to "government agencies, an attorney–client relationship is inferred when the agency 'deal[s] with its attorneys as would any

private party seeking advice to protect personal interests.'" *Id.*, at*7 (quoting *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 863 (D.C. Cir. 1980)).

Here, Defendant asserted the attorney-client privilege to communications between ICE employees and their legal counsel. *See* Pineiro Decl., ¶ 64. The Pineiro Declaration sets forth the foreseeable harm from disclosure of these communications, which could chill interactions and communications between ICE employees and their counsel and prevent effective representation of the agency's best interests. *Id.*

       c.  Exemptions 6, 7(C) and 7(F).

"FOIA Exemptions 6 and 7(C) seek to protect the privacy of individuals identified in certain agency records." *Am. Civil Liberties Union v. DOJ*, 655 F.3d 1, 6 (D.C. Cir. 2011). Exemption 7(C) authorizes withholding of records compiled for law enforcement purposes if their release "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). This exemption requires the agency to balance the individual's privacy rights against the public interest in disclosure *See DOJ v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 762 (1989). Exemption 6 protects "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). For this exemption to apply, the information at issue must be maintained in a government file and "appl[y] to a particular individual." *U.S. Dep't of State v. Wash. Post Co.*, 456 U.S. 595, 602 (1982). The agency then balances the individual's right to privacy against the public's interest in disclosure. *Reed v. NLRB*, 927 F.2d 1249, 1251 (D.C. Cir. 1991).

Courts broadly construe the privacy interests protected by Exemptions 6 and 7(C). *See Reporters Comm. for Freedom of the Press*, 489 U.S. at 763. Although the names of government employees are not categorically protected, there is still a strong presumption against release. *See*

*Cooper v. DOJ*, 169 F. Supp. 3d 20, 36 (D.D.C. 2016). "Generally, government employees and officials, especially law enforcement personnel, have a privacy interest in protecting their identities because disclosure 'could subject them to embarrassment and harassment in the conduct of their official duties and personal affairs.'" *Moore v. Bush*, 601 F. Supp. 2d 6, 14 (D.D.C. 2009) (quoting Halpern v. FBI, 181 F.3d 279, 296-97 (2d Cir. 1999)).

Here, Defendant has withheld under Exemptions 6 and 7(C) names and other identifying information of third-party individuals and ICE employees. Pineiro Decl., ¶¶ 65-74. The Pineiro Declaration provides that ICE applied Exemption 6 and 7(C) to protect from disclosure ICE employees' and third-parties' names, contact information, including email addresses, and other personally identifiable information. *Id.*, ¶ 68. The Pineiro Declaration also explains how disclosure of this information could expose the individuals to harm, including harassment, intimidation targeting and annoyance. *Id.*, ¶¶ 69-74. Summary judgment as to Defendant's Exemption 6 and 7(C) claims is therefore warranted. *See, e.g., Webster v. USDOJ*, No. 1:02-cv-00603, 2020 WL 1536303, at *6-7 (D.D.C. Mar. 31, 2020) (upholding the FBI's invocation of Exemption 7(C), for, among other things, "third parties who were interviewed and/or provided information to the FBI during the course of its investigation of the subject and other third parties," "state and local law enforcement personnel," "third parties who were merely mentioned in the criminal investigative files responsive to Plaintiffs' request," "third parties who were of investigative interest to the FBI," and FBI special agents and "FBI support employees"); *Gatson*, 2017 WL 3783696, at *11 (upholding the FBI's invocation of Exemptions 6 and 7(C) for, among other things, "non-FBI federal, state and local government employees … [and] third-party victims").

This information is also properly withheld under Exemption 7(F), which protects "records for information compiled for law enforcement purposes [when disclosure] could reasonably be

expected to endanger the life or physical safety of any individual." 5 U.S.C. § 522(b)(7)(F). The Pineiro Declaration explains how the nature of the criminal activities being investigated in the records and the circumstances associated with this case could endanger the lives or safety of law enforcement officials and agency employees. Pineiro Decl., ¶¶ 65-70, 82. The Pineiro Declaration explains how ICE and other agencies have reason to expect that if information about the individuals involved in the investigations and prosecutions, or individuals who cooperated, those individuals could be harmed. *See id.*

      d.  <u>Exemption 7(E).</u>

Exemption 7(E) protects from mandatory disclosure records or information compiled for law enforcement purposes if release "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E). Exemption 7(E) "protects law enforcement agencies from being required to provide information that might help criminals avoid apprehension." *Epps v. DOJ*, 801 F. Supp. 787, 795 (D.D.C. 1992), aff'd in part and vacated in part, 995 F.2d 305 (D.C. Cir. 1993) (Table); *Gluckman v. U.S. Dep't of Labor*, No. 3:13-cv-00169, 2013 WL 6184957, at *5 (E.D. Va. Nov. 26, 2013) (quoting *Blackwell*, 646 F.3d at 42).

Here, Defendant asserts Exemption 7(E) to protect law enforcement sensitive information, such as the methods that ICE uses to conduct operations, techniques and procedures currently used and discussions between ICE employees including serial and bank account numbers. Pineiro Decl., ¶¶ 76-77, 80. As explained more fully in the Pineiro Declaration, release of this information would give criminals insight into ICE tools and resources to conduct its investigations and how to circumvent them, or to engage in activity that would sacrifice the safety of ICE employees and the

public. *See id,* ¶¶ 78-81*; see e.g., Shapiro*, 2020 WL 3615511, at \*35-40 (upholding the FBI's invocation of Exemption 7(E) for, among other things, "database information and/or printouts," "undercover operations," "investigative focus of specific investigations," "database information and/or printouts," "a specific law enforcement technique utilized to conduct national security investigations," "dates and/or types of investigations," and "sensitive file numbers or subfile names"); *Viola v. USDOJ*, 306 F. Supp. 3d , 332-33 (D.D.C. 2018) (holding the FBI's invocation of Exemption 7(E) for, among other things, "targets of pen registers/trap and trace devices; undercover operations; and internal FBI email and IP addresses"). As a result, Defendant properly applied Exemption 7(E) to these records. *See Gatson*, 2017 WL 3783696, at \*12-15 (upholding the FBI's invocation of Exemption 7(E) to, among other things, "tactical information contained in operational plans" and "computer analysis response team reports and data"); *O'Brien v. DOJ*, No. 2:20-cv-00092, 2022 WL 2651850, at \*9 (E.D. Pa. July 8, 2022) (upholding the FBI's invocation of Exemption 7(E), to, among other things, "surveillance techniques and information on surveillance targets and locations").

### C. Defendant Has Satisfied Any Duty to Segregate.

FOIA requires that "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under this subsection." 5 U.S.C. § 552(b). The duty to segregate does not require disclosure of records in which the non-exempt information that remains is meaningless. *See Nat'l Sec. Archive Fund, Inc. v. CIA*, 402 F. Supp. 2d 211, 220-21 (D.D.C. 2005) (concluding that no reasonably segregable information exists because, as stated in the defendant's declaration, "the non-exempt information would produce only incomplete, fragmented, unintelligible sentences composed of isolated, meaningless words").

28

As set forth in the Pineiro Declaration, a line by line review was conducted to identify all information expect from disclosure for which a discretionary waiver of exemption could be applied and all reasonably segregable information has been released to Plaintiff. Pineiro Decl., ¶¶ 83-85. Accordingly, Defendant has produced all "reasonably segregable portion[s]" of the responsive records.  See 5 U.S.C. § 552(b).

## V.    CONCLUSION

For the reasons explained above, the Court should grant this Motion, enter summary judgment in Defendant's favor, and dismiss the Complaint with prejudice.

Date:  October 21, 2024                Respectfully submitted,

Erek L. Barron
United States Attorney

_____/s/_____
Alicia L. Shelton (Bar No. 11538)
Assistant United States Attorney
36 South Charles Street, 4th Floor
Baltimore, Maryland 21201
(410) 209-4836 (direct)
(410) 962-2310 (fax)
alicia.shelton2@usdoj.gov

*Counsel for Defendant*

## CERTIFICATE OF SERVICE

I certify that on this 21st day of October, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System, which will send notice of such filing to all counsel.

_____/s/_____
Alicia L. Shelton
Assistant United States Attorney

29