IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

MARK ZAID,

    Plaintiff,

  v.

UNITED STATES DEPARTMENT OF
HOMELAND SECURITY,

    Defendant.

Case No. 8:22-cv-01602-DKC

**DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**

Defendant, the United States Department of Homeland Security, through its undersigned counsel, Erek L. Barron, United States Attorney for the District of Maryland, and Alicia L. Shelton, Assistant United States Attorney for that district, submits this reply to Plaintiff's Opposition to Defendant's Motion for Summary Judgment ("Plaintiff's Opposition" and "Defendant's Motion").

Through a FOIA Request, Plaintiff, counsel for Zackary Sanders, seeks documents related to Mr. Sanders conviction of child sex crimes.[1] Defendant has established that ICE adequately searched for responsive records, properly withheld documents under pertinent FOIA Exemptions, and produced the responsive records that were reasonably segregable. As set forth in Defendant's Motion, summary judgment in favor of Defendant on ICE's response to Plaintiff's FOIA Request. Plaintiff does not dispute the majority of these issues. Plaintiff's Opposition does not dispute the adequacy of ICE's search in response to Plaintiff's FOIA Request. ECF No. 50 at 7 n.2.[2]

---

[1] Capitalized terms herein that are not otherwise defined are given the meanings as defined in Defendant's Motion.

[2] Citations are to the CM/ECF numbering at the top of each pleading.

Plaintiff's Opposition also does not dispute the appropriateness of Defendant's withholding of records in full pursuant to Exemptions 3, 5, 7(E) and 7(F). *See id.* Additionally, Plaintiff does not dispute ICE's partial withholdings pursuant to relevant Exemptions and ICE's production of those records with redactions. *See id.*

Plaintiff's Opposition argues three issues:[3] that the Court should not grant summary judgment with respect to ICE's withholdings pursuant to Exemption 7(A) because the Pineiro Declaration did not use functional categories to identify the withheld documents; that Exemption 6 and 7(C) should not apply to ICE personnel of a GS-14 supervisory level and local supervisory equivalents; and that Defendant has not provided sufficient information regarding its segregability analysis. *Id.* at 7, 15, 17, 18. First, with respect to documents withheld pursuant to Exemption 7(A), Plaintiff concedes that those documents were compiled for a law enforcement purpose. *Id.* at 11. Plaintiff challenges only whether ICE's categorial description of documents is sufficient and whether Defendant has sufficiently linked each category of documents to resulting harm from disclosure. *See id.* at 11-12. Through Defendant's Motion, the Pinero Declaration, the *Vaughn* Index and now the *Supplemental Declaration of Fernando Pineiro in Support of Defendant's Reply to Plaintiff's Opposition to Defendant's Motion for Summary Judgment* ("Supplemental Pineiro Declaration") attached hereto as **Exhibit A**, Defendant has satisfied its burden of demonstrating that the disclosure of the withheld documents could reasonably be expected to interfere with law enforcement proceedings. Second, with respect to Exemptions 6 and 7(C), Defendant has met its

---

[3] In several pleadings and in Defendant's *in camera* submission to the Court, the parties have notified the Court of their dispute as to whether Plaintiff must comply with Defendant's clawback demand as it relates to Plaintiff's dissemination of those records to third-parties. *See e.g.*, ECF No. 43; ECF No. 45; ECF No. 47. In Plaintiff's Opposition, Plaintiff states that it refuses to comply with Defendant's clawback demand unless the Court issues an order requiring compliance. Defendant is concurrently filing a separate motion to address the clawback issue.

burden to withhold names and other identifying information of third-parties, ICE employees and local law enforcement, which Plaintiff does not dispute in large part. Plaintiff has provided no basis for its arbitrary objection to withholding of identities of "GS-14 supervisory position or local equivalent" employees, and Plaintiff's argument should be rejected. Finally, Defendant through the Pineiro Declaration, the *Vaughn* Index and the Supplemental Pineiro Declaration, has made clear that a document-by-document review was conducted, ICE produced the documents that could be reasonably segregable, and there are no reasonably segregable records that can be produced. Plaintiff's Opposition fails to raise a dispute of material fact and summary judgment should be granted in favor of Defendant.

**I.  DEFENDANT PROPERLY WITHHELD RECORDS UNDER EXEMPTION 7(A) BECAUSE THE RECORDS WERE COMPILED FOR A LAW ENFORCEMENT PURPOSE AND DISCLOSURE WOULD INTERFERE WITH LAW ENFORCEMENT PROCEEDINGS.**

As explained in Defendant's Motion, summary judgment should be granted in favor of Defendant because ICE has established that all documents withheld in full pursuant to Exemption 7(A) were compiled for law enforcement purposes, and disclosure of the records could reasonably be expected to interfere with law enforcement proceedings. *See Shapiro v. DOJ*, No. 1:12-cv-00313, 2020 WL 3615511, at *16 (D.D.C. July 2, 2020). Plaintiff does not dispute that the records withheld pursuant to Exemption 7(A) were compiled for law enforcement purposes. *See* ECF No. 50 at 11. Plaintiff argues only that Defendant's Exemption 7(A) withholdings were improper because, according to Plaintiff, the Pineiro Declaration's categorization of documents did not list "functional categories" for the withheld documents. *See id.* at 12-13. Plaintiff then argues that because the documents were not in "functional categories," Defendant did not link each functional category to the harm that is reasonably likely to result from disclosure. *See id.* at 13-14. Plaintiff is wrong on both accounts.

First, as Defendant's Motion explains, *see* ECF No. 49-1 at 21-24, the Pineiro Declaration satisfies Defendant's burden to show that Exemption 7(A) applies to the categories of documents at issue. *See Zaid v. Dep't of Just.*, 96 F.4th 697, 704 (4th Cir. 2024) (explaining that the agency "need not establish that 7(A) applies to each record withheld," and that Exemption 7(A) "may be invoked on a categorical or 'generic' basis by grouping records into categories and explaining how each category would generally interfere with enforcement proceedings"). In the Pineiro Declaration and the attached *Vaughn* Index, ICE identified categories of records and the types of documents in each category. ECF No. 49-2 at ¶¶ 46-47 (explaining the *Vaughn* Index categorization of documents), 53 (noting that records withheld pursuant to Exemption 7(A) included "electronic communications, internal reports, affidavits, subpoenas, applications for search warrants, search warrants, and motions to seal records"), Attachment A. The *Vaughn* Index lays out the 7(A) withholding categories, including (1) communications between ICE, other law enforcement and attorneys regarding ongoing criminal investigations and the document types included, (2) communications regarding law enforcement techniques and surveillance and the document types included, (3) applications for search warrants and related communications and the document types, and (4) communications between ICE, other law enforcement and attorneys regarding targets of ongoing investigations and the document types included. *See* ECF No. 49-2 at Attachment A. The *Vaughn* Index also provides the specific harm that could reasonably be expected to result from disclosure of documents in each of those categories. *See id.*

The Supplemental Pineiro Declaration goes even further to clarify the categories of records in the *Vaughn* Index as three functional groups: (1) Investigative Strategy and Operational Plans, (2) Surveillance and Monitoring Records, and (3) Investigative Techniques and Procedures." Supp. Pineiro Decl., ¶ 9. For each group, the Supplemental Pineiro Declaration provides the types

of documents included in each category, the types of sensitive information contained in them, and the specific harm that would result from disclosure. *See id.*, ¶¶ 9-19. With respect to Investigative Strategy and Operational Plans, the Supplemental Pineiro Declaration explains:

> The category of Investigative Strategy and Operational Plans encompasses documents and communications that outline the objectives, priorities, and methods of an ongoing law enforcement investigation. These records include materials that reflect the reasoning, planning, and decision-making process involved in identifying targets, allocating resources, and determining operational timeliness. The documents within this category, as reviewed by the Special Agent and withheld pursuant to FOIA Exemption 7(A), include communications describing the scope of the investigation, emails between law enforcement agents discussing targets of the investigation, and communications evaluating strategies or steps to advance the investigation.

*Id.*, ¶¶ 10-11. With respect to Surveillance and Monitoring Records, the Supplemental Pineiro Declaration explains:

> The category of surveillance and monitoring records encompasses documents and materials generated during the observation, tracking, or monitoring of individuals, locations or activities as part of a law enforcement investigation. The documents within this category, as reviewed by the Special Agent and withheld pursuant to FOIA Exemption 7(A), include communications discussing IP tracking, communications concerning surveillance activities, and emails addressing the outcomes of surveillance efforts such as search warrants.

*Id.*, ¶¶ 13-14. With respect to Investigative Techniques and Procedures, the Supplemental Pineiro Declaration explains:

> The category of Investigative Techniques and Procedures encompasses documents and communications that describe the tools, methods, and processes used by ICE to conduct investigations. These techniques and procedures may include both traditional and technologically advanced methods designed to gather evidence, monitor criminal activity, or identify and apprehend suspects. Importantly, these records reflect operational practices that, if disclosed, could compromise their effectiveness or reveal sensitive methodologies that are critical to future law enforcement efforts. The documents within this category, as reviewed by the Special Agent and withheld pursuant to Exemption 7(A), include technical reports and protocols detailing the use of advanced investigative technologies that was relied upon in connection with the active, ongoing investigations mentioned above, procedural guidelines that outline critical law enforcement practices, and draft warrants and emails between agents discussing the development and execution of search warrants.

Supp. Pineiro Decl., ¶¶ 16-17. As a result, Defendant satisfies any burden it caries to describe document categories with specificity. *See Zaid*, 96 F.4th at 705 (rejecting Plaintiff's argument that the agency "failed to describe the records in a functional manner" because the agency's declaration asserted that that providing a more detailed description could harm investigative efforts, and Plaintiff provided no reason to question the good faith of the agency's assertion").

Second, the Pineiro Declaration, the *Vaughn* Index and the Supplemental Pineiro Declaration establish that ICE's concerns in invoking Exemption 7(A) are that there are actual, ongoing investigation into individuals possibly committing horrible crimes similar to the ones of which Mr. Sanders was convicted and that disclosure of the withheld material would jeopardize those real-life investigations.[4] The supporting declarations and the *Vaughn* Index explain how disclosure of each category of documents withheld under 7(A) could reasonably be expected to result in harm. The Pineiro Declaration and *Vaughn* Index describe the harm that could reasonably be expected to result from disclosure of communications between ICE, other law enforcement and attorneys regarding targets of ongoing criminal investigations, such as enabling the targets to evade detection and/or destroy evidence. *See* ECF No. 49-2 at Attachment A. The Pineiro Declaration and *Vaughn* Index also describe the harm that could reasonably be expected to result from disclosure of communications regarding law enforcement techniques, such as allowing targets to circumvent the law and take proactive steps to counter operational and investigative actions. *See id.* Additionally, the Pineiro Declaration and *Vaughn* Index describe the harm that could reasonably be expected to result from disclosure of applications for search warrants and related

---

[4] In arguing that Defendant has not sufficiently connected each category to the asserted harm, Plaintiff relies on a decision in *Smith v. USDOJ*, No. 8:21-cv-01291, 2022 WL 4110291 (M.D. Fla. Sept. 8, 2022). *See* ECF No. 50 at 14-15 and n.6. As the Fourth Circuit made clear in *Zaid v. Dep't of Justice*, 96 F.4th 697, 706-07 (4th Cir. 2024), that case from the Middle District of Florida is not binding on this Court.

communications, such as providing people seeking to violate or circumvent the law with information to counter investigative actions. *See id.* Finally, the Pineiro Declaration and *Vaughn* Index also describe the harm that could reasonably be expected to result from disclosure of communications between ICE, other law enforcement and attorneys regarding targets of ongoing investigations, such as enabling targets of these investigations and other targets as well to elude detection and circumvent the law. *See id.*

The Supplemental Pineiro Declaration further describes the reasonably expected harm of disclosure as applied its three groupings of the documents. *See* Supp. Pineiro Decl., ¶ 23 (explaining that the underlying investigation and a larger child exploitation investigation are ongoing, and disclosure could jeopardize the investigations and place law enforcement officers and child victims at risk). With respect to Investigative Strategy and Operational Plans, the Supplemental Pineiro Declaration explains:

> These records contain sensitive information about the focus of operations and investigative targets. Revealing such details could be expected to alert perpetrators, allowing them to evade detection, retaliate against law enforcement agents, and escalate harm to their victims (children).

*Id.*, ¶ 12. With respect to Surveillance and Monitoring Records, the Supplemental Pineiro Declaration explains:

> Disclosing these documents could reveal the scope and targets of surveillance activities, the tools used to monitor suspects, and the rationale behind investigative decisions, thereby compromising the effectiveness of ongoing and future investigations. Moreover, disclosure of these documents could enable offenders to alter their behaviors to avoid detection, escalate harm to victims (children), and destroy critical evidence, undermining law enforcement efforts and endangering vulnerable individuals.

*Id.*, ¶ 15. With respect to Investigative Techniques and Procedures, the Supplemental Pineiro Declaration explains:

> These records detail specific methods and tools used to identify perpetrators of child exploitation, including digital surveillance techniques and coordination

> strategies for executing search warrants. Revealing these techniques would enable perpetrators to develop countermeasures, such as destroying evidence or altering behaviors to evade detection. This would not only hinder the immediate investigation but also compromise the effectives of these methods in future cases. Additionally, disclosure of such records could directly endanger the lives and safety of law enforcement agents involved in these sensitive operations. Criminal networks engaged in child exploitation often have the resources and motivation to retaliate against agents who disrupt their activities. Publicizing investigative methods or operational plans could expose agents to harassment, threats, or physical harm. Similarly, children who are already vulnerable to exploitation faced increased risk if perpetrators learn of the techniques used to uncover their crimes. This knowledge could prompt offenders to escalate their abuse or take extreme measures to avoid detection, further endangering the children involved. Protecting these investigative techniques and procedures is therefore critical not only to the success of current operations but also to safeguarding the children directly impacted by these types of crimes.

Supp. Pineiro Decl., ¶¶ 18-19. Defendant has satisfied its burden, through the Pineiro Declaration, the *Vaughn* Index and the Supplemental Pineiro Declaration, of explaining how the requested disclosure "would reveal to particular targets actual or potential, the scope, direction, or focus of the [agency's] inquiry." *Gray v. Army Crim. Investigation Command*, 742 F. Supp. 2d 68, 74 (D.D.C. 2010). Therefore, summary judgment on Defendant's Exemption 7(A) invocation is warranted.

II. **DEFENDANT PROPERLY WITHHELD INFORMATION PURSUANT TO EXEMPTIONS 6 AND 7(C) TO PROTECT THE NAMES AND OTHER IDENTIFYING INFORMATION OF SEVERAL CATEGORIES OF INDIVIDUALS.**

As explained in Defendant's Motion, the Pineiro Declaration, the *Vaughn* Index and the Supplemental Pineiro Declaration, Defendant properly withheld, pursuant to Exemptions 6 and 7(C), names and other identifying information of several categories of individuals, including ICE employees and third-parties. Plaintiff's Opposition concedes that Defendant properly invoked Exemption 7(C) with respect to ICE staff and third-parties. *See* ECF No. 50 at 17. Plaintiff also concedes that ICE GS-14 supervisory and local law enforcement equivalent employees were involved "to coordinate and conduct the investigation and prosecution of Sanders, as well as

alleged ongoing investigations into other third parties." *See id.* at 18.  Nonetheless, Plaintiff challenges Defendant's withholdings under 7(C) with respect to "officials who held a GS-14 supervisory position or local equivalent." *See id.*

The law is well-settled that "federal and state law enforcement personnel involved in investigations have cognizable interests in their names and personal information." *Webster v. U.S. Dep't of Just.*, No. CV 02-603 (RC), 2020 WL 1536303, at *6 (D.D.C. Mar. 31, 2020).  The Pineiro Declaration explains how ICE weighed the individuals' privacy interests against any public interest in disclosure and limited redactions to the names of individuals and other personally identifiable information.  ECF No. 49-2, ¶¶ 67-75 and Attachment A.  The Supplemental Pineiro Declaration further provides that for ICE employees and local law enforcement, including ICE GS-14 supervisors and local law enforcement equivalents, disclosure of their identities

> pose substantial risks given the highly sensitive nature of this investigation and the broader law enforcement efforts to prevent child exploitation and child pornography. Criminal organizations involved in such illicit activities are known to have extensive resources and the capacity to target law enforcement personnel and other individuals involved in these investigations through harassment, threats, or retaliation. Protecting the privacy of these individuals is vital to preserving their safety and ensuring the effectiveness of ongoing and future investigations.

Supp. Pineiro Decl., ¶ 22.  Plaintiff's argument that "[t]hese individuals served in positions of senior authority" and therefore should have less privacy protection falls flat.  *See* ECF No. 50 at 17-18.  Plaintiff has provided no legal authority to support his arbitrary carve-out for employees who are GS-14 supervisory level or their local equivalent.  Plaintiff's self-serving and unsupported statement is insufficient to refute the Agency's good faith assertions in the Pineiro Declaration and Supplemental Pineiro Declaration.  *See Zaid*, 96 F.4th at 705 (noting that Plaintiff provided no reason to question the good faith of the agency's declaration).  Summary judgment should be granted in favor of Defendant with respect to all withholdings under Exemptions 6 and 7(C).

### III. DEFENDANT HAS DEMONSTRATED THAT ALL REASONABLY SEGREGABLE PORTIONS OF RESPONSIVE RECORDS HAVE BEEN PRODUCED.

Plaintiff argues that even if Defendant has provided a basis for withholding records in full under the relevant Exemptions, Defendant has not provided sufficient evidence that segregable portions of the withheld information cannot be released. *See* ECF No. 50 at 18-19. Plaintiff's argument is without merit. For its segregability determination, the Court may "rely on an agency declaration" and an agency declaration that is "sufficiently detailed [is] presumed to be made in good faith and may be taken at face value." *Hamdan v. U.S. Dep't of Just.*, 797 F.3d 759, 779 (9th Cir. 2015) (noting that an agency can meet its burden by providing "a reasonably detailed description of the withheld material" and "facts sufficient to establish an exemption" (internal citation and quotation marks omitted)).

Here, the Pineiro Declaration, the *Vaughn* Index and the Supplemental Pineiro Declaration more than meet Defendant's burden to show that ICE properly considered segregability. The Pineiro Declaration explains how ICE implements the segregability standard in its search and review, how ICE conducted a document-by-document review of the 929 pages of potentially responsive records, and how ICE determined that 36 pages that had reasonably segregable portions, which ICE produced. *See* ECF No. 49-2, ¶¶ 28-29, 43, 48, 84-85. The *Vaughn* Index also identifies for each category of withholdings the reasonably expected risk of harm of disclosure, and where there were documents that contained segregable portions that could be disclosed, the *Vaughn* Index describes the partial withholdings. *See* ECF No. 49-2 at Attachment A. The Supplemental Pineiro Declaration provides further explanation of ICE's segregability analysis and the Agency's determination that no additional portions of the records at issue could be reasonably segregated without undermining critical law enforcement efforts. *See* Supp. Pineiro Decl., ¶ 20.

## IV. CONCLUSION

For the reasons explained above, and as set forth in Defendant's Motion for Summary Judgment, the Court should enter summary judgment in Defendant's favor and dismiss the Complaint with prejudice.

Date: December 27, 2024

Respectfully submitted,

Erek L. Barron
United States Attorney

/s/
Alicia L. Shelton (Bar No. 11538)
Assistant United States Attorney
36 South Charles Street, 4th Floor
Baltimore, Maryland 21201
(410) 209-4836 (direct)
(410) 962-2310 (fax)
alicia.shelton2@usdoj.gov

*Counsel for Defendant*

## CERTIFICATE OF SERVICE

I certify that on this 27th day of December, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System, which will send notice of such filing to all counsel.

/s/
Alicia L. Shelton
Assistant United States Attorney